UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) |
| | ) M.J. No. 21-7143-JCB |
| v. | ) |
| | ) |
| ANA CHECO, | ) |
| | ) |
| Defendant. | ) |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jill Booth, being duly sworn, depose and state as follows:

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws.  I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since September 2016.  I currently am assigned to the New England Field Division's Task Force 1 located in the Boston Office.  Prior to my employment as a Special Agent, I was employed as a DEA Diversion Investigator from May 2012 to August 2016.  As a Diversion Investigator, I was assigned to the DEA Boston Tactical Diversion Squad, a task force created to disrupt and dismantle those suspected of diverting licit pharmaceuticals and/or chemicals.  Prior to my employment with DEA, I was employed an Intelligence Analyst at the New York/New Jersey High Intensity Drug Trafficking Area (HIDTA) under Homeland Security Investigation's El Dorado Task Force for three (3) years.

2.      As a DEA Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code.  I have received training regarding narcotics investigations while attending the Basic Agent Academy in Quantico, Virginia, and have attended additional specialized training courses in furtherance of my past and current assignments.

3.      I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations, and the court-authorized interception of communications.  I have also reviewed taped conversations and telephone, financial, and drug records.  Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

4.      I submit this affidavit in support of a Criminal Complaint charging Ana CHECO with violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi) (possession with intent to distribute 400 grams or more of fentanyl).

5.       I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the DEA and other federal, state, and local law enforcement agencies.  I have also reviewed information from a variety of additional sources, including a confidential source, and from telephone toll records, responses to administrative subpoenas, and undercover pickups of drug proceeds.

6.      This affidavit is submitted for the limited purpose of establishing probable cause to believe that CHECO has committed the above offense.  Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation.  I have set forth only the facts that I believe are needed to establish the requisite probable cause.

7.      As set forth below, on June 24, 2019, an undercover law enforcement officer (the "UC") picked up $58,510 in suspected drug proceeds from CHECO.  Thereafter, agents obtained warrants authorizing them to obtain precise location for a telephone used by CHECO and to

install and use a global positioning system ("GPS") tracking device on a vehicle used by CHECO. The information produced by the GPS and precise location warrants showed that CHECO lived in building 2 at 311 Lowell Street, Andover, Massachusetts. After identifying 311 Lowell Street, Apartment 2211 as CHECO's residence, agents obtained a search warrant for that location. On July 17, 2019, agents seized approximately eight kilograms of fentanyl, one of which also contained valeryl fentanyl, as well as additional controlled substances from CHECO's residence.

<u>Undercover Pickup of $58,510 from CHECO on June 24, 2019</u>

8.  Agents in New Jersey currently are investigating a large-scale international money laundering organization. Agents have received information from a confidential source of information ("CS-1") since early 2018. CS-1 has pleaded guilty to money laundering offenses and is cooperating in the hopes of receiving leniency at sentencing. CS-1 has no other criminal history. Some of the information CS-1 has provided has been corroborated by other evidence. Information provided by CS-1 has led to the seizure of drugs and drug proceeds. Information provided by CS-1 is believed to be reliable.

9.  CS-1 is in contact with money brokers based in the United States and abroad. These money brokers act as liaisons between drug suppliers based in Central and/or South America and their drug customers in the United States. The money brokers facilitate the laundering of drug proceeds from inside the United States to the drug suppliers located outside the United States. This laundering involves the retrieval of drug proceeds from drug distributors in the United States. The drug proceeds are then deposited into bank accounts and ultimately transferred to accounts controlled by the drug suppliers located outside the United States. CS-1 receives contracts for money pickups from money brokers. Law enforcement agents have

conducted controlled money pickups contracted by CS-1 in cities throughout the United States. Agents have seized over 1,000 kilograms of drugs, approximately 320 of which are fentanyl, as well as approximately $158 million, in connection with the pickups.

10. On or about June 20, 2019, CS-1 received information from a money broker that a person wanted to drop off money in Boston for laundering. That day, CS-1 provided the money broker offering the contract the serial number for a $1 bill in the possession of a law enforcement agent; the serial number was to serve as a code at the time of the money pickup confirming that the person conducting the pickup was to receive the money on behalf of the money broker. Based on my training and experience, such use of serial numbers as a confirmatory code is a common practice among drug traffickers and money launderers to ensure that drug proceeds are provided to the correct people.

11. On June 22, 2019, CS-1 was contacted by a person later identified as CHECO using telephone number (978) 566-8189. CHECO provided CS-1 with the confirmatory serial number code via text message. CHECO further texted CS-1, "58,500," which CS-1 understood to mean that CHECO would be dropping $58,500 for laundering. CHECO and CS-1 arranged for the money to be picked up the following Monday at a location in Medford, Massachusetts.

12. On June 24, 2019, CHECO arrived at the prearranged meeting location in a 2010 black Honda Accord with Massachusetts Registration 6LV139, registered to her at 311 Lowell Street, Apartment 2211, Andover, Massachusetts 01810. CHECO parked next to the UC's car, approached the passenger side of the UC's vehicle, and leaned inside the open window. CHECO confirmed the serial number code on the $1 bill in the UC's possession via her cellular telephone, took half of the dollar bill, and then instructed the UC to change locations within the parking lot, as she believed there were too many surveillance cameras in the location where the

UC was positioned. CHECO then reentered the Accord and drove to an adjacent area of the same shopping center. The UC also repositioned his vehicle as instructed by CHECO.

13. At that time, CHECO exited the Accord carrying a white plastic bag. She opened the back passenger side door of the UC's vehicle, placed the white plastic bag in the back seat, and placed a pair of gym shorts from the UC's vehicle over top of the plastic bag. CHECO stated that it looked better with the gym shorts over top of the bag. The interaction between CHECO and the UC was audio- and video-recorded. CHECO then reentered the driver's seat of the Accord and left the area.

14. The plastic bag CHECO left in the UC's vehicle contained a "Little Bites" muffin box, which in turn contained $58,510. The money (less a commission) ultimately was transferred to a bank account provided to CS-1 by the money broker who offered the contract.

Seizure of Drugs, Drug Proceeds, and Drug Paraphernalia from CHECO's Residence

15. On July 17, 2019, agents obtained a search warrant for CHECO's residence (311 Lowell Street, Apartment 2211, Andover, Massachusetts). The warrant was executed that day. Agents encountered CHECO outside of the building. Several of her family members were inside the apartment. Agents seized approximately seven kilograms of fentanyl and $18,325 from bags in the closet of CHECO's daughter's bedroom. CHECO directed agents to the kilograms.

16. From the kitchen, agents seized four notebooks that appear, based on my training and experience, to be consistent with drug ledgers. Agents also seized paperwork in CHECO's name and the half dollar bill given to CHECO during the money pickup on June 24, 2019.

17. From a hallway closet, agents seized an air compressor containing a hidden compartment. CHECO opened the hidden compartment for agents using a remote control and an

Allen key. The hidden compartment was empty. Based on my training and experience, such hidden compartments are commonly used by drug traffickers to store drugs or drug proceeds.

18. From the closet of CHECO's bedroom, agents seized approximately four kilograms of tramadol, a schedule IV controlled substance, and approximately one kilogram of 4-Bromo-2,5-dimethoxyphenethylamine ("2C-B"), a schedule I controlled substance. Agents also seized approximately one kilogram of a mixture of fentanyl and valeryl fentanyl (a fentanyl analogue) from CHECO's bedroom closet. CHECO's fingerprint was located on one of the packages of tramadol. No fingerprints were located on the fentanyl or valeryl fentanyl packaging.

19. Agents also seized the cellular telephone assigned telephone number (978) 566-8189, which CHECO had used to arrange the money pickup on June 24, 2019.

20. Based on my training and experience, possession of eight kilograms of fentanyl is consistent with possession with intent to distribute fentanyl.

//
//
//
//
//
//
//
//
//
//

**Conclusion**

21.     Based upon the foregoing, there is probable cause to believe that on July 17, 2019, Ana CHECO did possess with intent to distribute 400 grams or more of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

*Jill Booth*
_____
Jill Booth
Special Agent
Drug Enforcement Administration

Sworn to by telephone in accordance with Fed. R. Crim. Pr. 4.1 on May 27, 2021,

_____
HON. JENNIFER C. BOAL
United States Magistrate Judge
District of Massachusetts